UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------
ALYSSE L. H.,

Plaintiff,

**DECISION AND ORDER**
1:25-CV-09801-GRJ

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.
---------------------------------------------------
GARY R. JONES, United States Magistrate Judge:

In October of 2022, Plaintiff Alysse L.H.[1] applied for Disability Insurance Benefits and Supplemental Security Income Benefits under the Social Security Act. The Commissioner of Social Security denied the applications. Plaintiff, represented by the Law Office of Charles E. Binder and Harry J. Binder, LLP, Charles E. Binder, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's denial of benefits under 42 U.S.C. §§ 405 (g) and 1383 (c)(3). The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 14).

This case was referred to the undersigned on October 9, 2026. Presently pending are the parties' competing requests for judgment on the

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

pleadings pursuant to Rule 12 (c) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's request is due to be granted, the Commissioner's request is denied, and this matter is remanded for calculation of benefits.

## I. BACKGROUND

### *A. Administrative Proceedings*

Plaintiff applied for benefits on October 31, 2022, alleging disability beginning August 9, 2021. (T at 77-80, 216-32).[2] Plaintiff's applications were denied initially and on reconsideration. She requested a hearing before an Administrative Law Judge ("ALJ").

A hearing was held on April 24, 2024, before ALJ Michael J. Stacchini. (T at 38-62). Plaintiff appeared with an attorney and testified. (T at 46-58). The ALJ also received testimony from Joseph Atkinson, a vocational expert. (T at 59-61).

### *B. ALJ's Decision*

On November 14, 2024, the ALJ issued a decision denying the applications for benefits. (T at 7-30). The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September

[2] Citations to "T" refer to the administrative record transcript at Docket No. 7.

30, 2023 (the date last insured) and had not engaged in substantial gainful activity since August 9, 2021 (the alleged onset date). (T at 13).

The ALJ concluded that Plaintiff's anxiety disorder, depressive disorder, bipolar disorder, specific learning disorder, post-traumatic stress disorder (PTSD), panic disorder, fibromyalgia, generalized hypermobility spectrum disorder, and obesity were severe impairments as defined under the Act. (T at 13).

However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equals one of the listed impairments in 20 CFR Part 403, Subpart P, Appendix 1. (T at 14).

At step four of the sequential analysis the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work, as defined in 20 CFR 404.1567 (b), with the following limitations: she can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl, but must avoid unprotected heights and hazardous machinery. (T at 17).

The ALJ further found that Plaintiff can understand, remember, and carry out simple tasks, with regular breaks at approximately two-hour intervals, and engage in decision-making and tolerate changes in a work

setting requiring only simple, routine tasks, with no more than occasional interaction with the public, co-workers, and supervisors. (T at 17).

The ALJ concluded that Plaintiff had no past relevant work. (T at 23).

Considering Plaintiff's age (24 on the alleged onset date), education (at least high school), work experience (no past relevant work), and RFC, the ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. (T at 24).

As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, and was not entitled to benefits for the period between August 9, 2021 (the alleged onset date) and November 14, 2024 (the date of the ALJ's decision). (T at 25).

On October 6, 2025, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (T at 1-6).

*C. Procedural History*

Plaintiff commenced this action, by and through her counsel, by filing a Complaint on November 25, 2025. (Docket No. 1). On May 8, 2026, Plaintiff filed a brief requesting judgment on the pleadings. (Docket No. 8). The Commissioner on July 3, 2026, interposed a brief in opposition to Plaintiff's request and requesting judgment on the pleadings. (Docket No.

10). On July 13, 2026, Plaintiff submitted a reply brief in further support of her request. (Docket No. 11).

## II. APPLICABLE LAW

### *A. Standard of Review*

"It is not the function of a reviewing court to decide de novo whether a claimant was disabled." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). The court's review is limited to "determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard." *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which

conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

*B. Five-Step Sequential Evaluation Process*

Under the Social Security Act, a claimant is disabled if he or she lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months ...." 42 U.S.C. § 423(d)(1)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a five-step sequential analysis:

> 1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.
>
> 2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

> 3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.
>
> 4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.
>
> 5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*See Rolon v. Commissioner of Soc. Sec*., 994 F. Supp. 2d 496, 503 (S.D.N.Y. 2014); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; the burden shifts to the Commissioner at step five. *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner determines whether the claimant can perform work that exists in significant numbers in the national economy. *See Butts v. Barnhart*, 416 F.3d 101, 103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

## III. DISCUSSION

Plaintiff raises two main arguments in support of her request for reversal of the ALJ's decision. First, Plaintiff argues that the ALJ's analysis

of the medical opinion evidence was flawed, which undermines his assessment of her ability to meet the mental demands of basic work activity. Second, Plaintiff contends that the ALJ erred in discounting her subjective complaints. The Court will address each argument in turn.

*A. Medical Opinion Evidence*

"Regardless of its source, the ALJ must evaluate every medical opinion in determining whether a claimant is disabled under the [Social Security] Act." *Pena ex rel. E.R. v. Astrue*, No. 11-CV-1787 (KAM), 2013 WL 1210932, at *14 (E.D.N.Y. Mar. 25, 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(d) (2020)) (internal quotation marks omitted).

In January of 2017, the Social Security Administration promulgated updated regulations regarding the consideration of medical opinion evidence. The revised regulations apply to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c. Because Plaintiff applied for benefits after that date, the revised regulations apply here.

The ALJ no longer gives "specific evidentiary weight to medical opinions," but rather considers all medical opinions and "evaluate[s] their persuasiveness" based on supportability, consistency, relationship with the claimant, specialization, and other factors. *See* 20 C.F.R. § 404.1520c (a), (b)(2).

The ALJ is required to "articulate how [he or she] considered the medical opinions" and state "how persuasive" he or she finds each opinion, with a specific explanation provided as to the consistency and supportability factors. *See* 20 C.F.R. § 404.1520c (b)(2).

Consistency is "the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources." *Dany Z. v. Saul*, 531 F. Supp. 3d 871, 882 (D. Vt. 2021)(citing 20 C.F.R. § 416.920c(c)(2)). The "more consistent a medical opinion" is with "evidence from other medical sources and nonmedical sources," the "more persuasive the medical opinion" will be. *See* 20 C.F.R. § 404.1520c(c)(2).

Supportability is "the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations." *Dany Z*, 531 F. Supp. 3d at 881. "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520 (c)(1), 416.920c(c)(1).

The record contains several medical opinions related to Plaintiff's mental functioning. The Court will summarize those opinions and then address the ALJ's analysis.

Dr. Perry Branson, a psychiatrist, completed a psychiatric/ psychological impairment questionnaire in April of 2024. He had been treating Plaintiff monthly for a year. (T at 581). Dr. Branson diagnosed major depressive disorder, cannabis use, irritable bowel syndrome, and fibromyalgia. (T at 581). He assessed moderate-to-marked impairment in Plaintiff's understanding and memory; moderate-to-marked limitation with respect to carrying out instructions and maintaining attention and concentration for extended periods; mild impairment in social interaction; and moderate limitation as to setting realistic goals. (T at 584). Dr. Branson opined that Plaintiff would be absent from work more than three times per month due to her impairments or treatment. (T at 585).

Dr. Alison Murphy performed a consultative psychiatric evaluation in March of 2023. She diagnosed history of unspecified anxiety disorder, history of major depressive disorder, and history of mood swings. (T at 397). Dr. Murphy opined that Plaintiff had no limitation with respect to understanding and memory; mild impairment in using reason and judgment to make work-related decisions; mild limitation as to social interaction; mild

impairment in sustaining a routine and regular attendance, regulating emotions, controlling behavior, and maintaining well-being; and moderate limitation in maintaining personal hygiene and appropriate attire. (T at 397).

Dr. Murphy conducted a second consultative evaluation in February of 2024. She diagnosed unspecified depressive disorder and unspecified anxiety disorder, along with a history of major depressive disorder, unspecified bipolar disorder, and agoraphobia. (T at 564). Dr. Murphy assessed no impairment in Plaintiff's ability to understand, remember, or apply simple directions and instructions; mild limitation with respect to complex directions and instructions and applying reason and judgment to make work-related decisions; marked impairment as to social interaction; mild limitation in sustaining concentration and performing at pace; marked impairment with respect to sustaining an ordinary routine and regular attendance; and marked limitation in regulating emotions, controlling behavior, and maintaining well-being. (T at 563-64). She believed Plaintiff had psychiatric problems "that may significantly interfere with [her] ability to function on a daily basis." (T at 564).

Dr. James Ellis, a psychologist, performed an evaluation in September of 2024. He diagnosed bipolar II disorder, post-traumatic stress disorder, and panic disorder. (T at 907). Dr. Ellis assessed moderate-to-

marked impairment in Plaintiff's understanding and memory, concentration and persistence, social interaction skills, and adaptation. (T at 910). He opined that Plaintiff would likely be absent from work more than three times per month due to her impairments or treatment. (T at 911).

The ALJ concluded that Plaintiff had mild limitation with respect to understanding and memory; moderate impairment in social interaction; moderate limitation with respect to concentrating, persisting, or maintaining pace; and moderate impairment as to adapting or managing herself. (T at 15-16).

As noted above, the ALJ determined that Plaintiff retained the RFC to meet the mental demands of work requiring only simple, routine tasks and involving no more than occasional interaction with others. (T at 17).

In reaching this conclusion, the ALJ found the opinions of Dr. Branson and Dr. Ellis unpersuasive and considered Dr. Murphy's opinions partially persuasive. (T at 21-22).

For the reasons that follow, the Court finds that the ALJ's assessment cannot be sustained even under the deferential standard of review applicable here.

First, the ALJ gave insufficient consideration to the fact that Dr. Branson is a treating provider, who had the opportunity to interact with and observe Plaintiff on a monthly basis over an extended period.

The Second Circuit has long recognized the particular importance of treating source opinions when reviewing claims involving mental impairments. *See Flynn v. Comm'r of SSA*, 729 F. App'x 119, 122 (2d Cir. 2018)("The treatment provider's perspective would seem all the more important in cases involving mental health, which are not susceptible to clear records such as [x-rays] or MRIs. Rather, they depend almost exclusively on less discretely measurable factors, like what the patient says in consultations.").

Although the treating physician rule is no longer in effect, this important principle persists, as the opportunity to observe and treat the claimant over a prolonged period constitutes important "support" for a medical opinion under the new standard. *See, e.g., Raymond M. v. Comm'r of Soc. Sec.*, No. 5:19-CV-1313 (ATB), 2021 WL 706645, at *8-9 (N.D.N.Y. Feb. 22, 2021).

"As the amended regulations note, '[a] medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder.'" *Id.* (quoting 20

C.F.R. §§ 404.1520c(c)(3)(v), 416.920c(c)(3)(v)); *see also Acosta Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-0502 (AJN) (KHP), 2021 WL 363682, at *9 (S.D.N.Y. Jan. 29, 2021), *report and recommendation adopted sub nom. Cuevas v. Comm'r of Soc. Sec.*, No. 20CV0502KMWKHP, 2022 WL 717612 (S.D.N.Y. Mar. 10, 2022), at *25-26 (S.D.N.Y. Jan. 29, 2021)("A survey of … cases … show[s] that while the treating physician's rule was modified, the essence of the rule remains the same, and the factors to be considered in weighing the various medical opinions in a given claimant's medical history are substantially similar.")(collecting cases).

"Even though ALJs are no longer directed to afford controlling weight to treating source opinions—no matter how well supported and consistent with the record they may be—the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating source's] opinion.'" *Shawn H. v. Comm'r of Soc. Sec.*, No. 2:19-CV-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020)(quoting *Barrett v. Berryhill*, 906 F.3d 340, 343 (5th Cir. 2018)).

Second, the ALJ erred by discounting each of the treating and examining opinions as inconsistent with his lay reading of the record without accounting for the significant consistency of the opinions *with each*

*other*. The ALJ's RFC determination is contrary to the shared assessment of every mental health professional who treated or examined Plaintiff that she had marked impairment in her ability to meet at least some of the mental demands of basic work activity. (T at 563-64, 584, 910). *See Shawn H. v. Comm'r of Soc. Sec*., No. 2:19-CV-113, 2020 WL 3969879, at *7 (D. Vt. July 14, 2020)("Moreover, the ALJ should have considered that the opinions of Stephens and Dr. Lussier are consistent with each other."); *Malia Ann B. v. Comm'r of Soc. Sec*., No. 5:21-CV-1362-AMN-CFH, 2023 WL 2838054, at *7 (N.D.N.Y. Feb. 23, 2023), *report and recommendation adopted*, No. 5:21-CV-1362-AMN-CFH, 2023 WL 2623865 (N.D.N.Y. Mar. 24, 2023)(collecting cases holding that "the ALJ is obligated to discuss the consistency of a medical opinion with the other evidence in the record, which necessarily includes other medical opinions").

Third, the ALJ overrated the relevance of Plaintiff's ability to maintain appropriate attendance and affect during periodic (weekly or monthly) encounters with supportive medical professionals.

The Commissioner's regulations recognize that a claimant's "ability to complete tasks in settings that are highly structured, or that are less demanding or more supportive than typical work settings does not necessarily demonstrate [her] ability to complete tasks in the context of

regular employment during a normal workday or work week." 20 C.F.R. Subpt. P, App. 1 § 12.00 (C) (6) (b); *see also Primo v. Berryhill*, No. 17 CIV. 6875 (LTS) (HBP), 2019 WL 2453343, at *13 (S.D.N.Y. Feb. 19, 2019), *report and recommendation adopted sub nom. Primo v. Comm'r of Soc. Sec.,* No. 17 CV 6875-LTS-SLC, 2021 WL 1172248 (S.D.N.Y. Mar. 29, 2021)(noting that ALJs must recognize that "the effects of a mental health issue may be different in a work setting than in a non-work setting"); *Flynn v. Comm'r of Soc. Sec. Admin.*, 729 Fed. Appx. 119, 121 (2d Cir. 2018) (decision to discount opinion based on treatment notes indicating claimant was "well-groomed and with calm affect" was "an assessment ... beyond the scope of the ALJ's authority").

There is no doubt that Plaintiff's ability to meet the mental demands of basic work activity is significantly limited – the ALJ found her restricted to a reduced range of unskilled work. The key question, however, is the extent to which Plaintiff's symptoms would be exacerbated if she was exposed to the demands of competitive, remunerative work on a consistent basis. Both Dr. Branson and Dr. Ellis believed Plaintiff would be absent from work on an excessive basis due to her mental impairments. (T at 585, 911). Dr. Murphy opined that Plaintiff had marked impairment in her ability to sustain an ordinary routine and regular attendance. (T at 564). The ALJ

erred by discounting the treating and examining mental health providers' shared assessment. *See Stacey v. Comm'r of SSA*, 799 F. Appx. 7, 11 (2d Cir. 2020)("It would be improper to rely on these mental status evaluations to conclude that Stacey is capable of prolonged concentration while simultaneously ignoring the contrary conclusion of the very physicians who made the evaluations.").

Further, while the treatment notes document Plaintiff as presenting with a cooperative attitude and appropriate engagement at medical appointments, they likewise describe a person suffering from significant psychiatric symptoms and experiencing variable levels of functioning. (T at 406, 413, 478, 545, 547, 587-90, 595, 664, 690, 693, 949, 952, 963, 970, 971, 987, 990, 1004-1005, 1007, 1010). *See Stacey*, 799 F. Appx. at 10 (cautioning "ALJs against scouring medical notes to draw their own conclusions based on isolated descriptions"); *Gough v. Saul*, 799 F. Appx. 12, 14 (2d Cir. 2020)("We fear that the ALJ cherry-picked evidence from the record to support his conclusion that Gough could work full time even though the record as a whole suggested greater dysfunction."); *Kohler v. Astrue*, 546 F.3d 260, 268 (2d Cir. 2008)(finding that ALJ erred by, *inter alia*, "consistently interpret[ing] reports that [claimant's] condition has been 'stable' to mean that [her] condition has been good, when the term could

mean only that her condition has not changed, and she could be stable at a low functional level”).

Fourth, the ALJ placed undue emphasis on Plaintiff’s ability to engage in a rather limited range of activities of daily living, which included basic household chores, pet care, and attending to personal hygiene. (T at 17).

A claimant “need not be an invalid to be found disabled” and should not be punished for exerting the effort to attend to basic necessities of life. *See Balsamo v. Chater*, 142 F.3d 75, 81-82 (2d Cir. 1998).

Moreover, as discussed above, the treatment record documents significant symptoms persisting over time. Plaintiff’s ability to attend to basic activities of daily living does not translate into the ability to perform competitive work on a consistent basis. *See Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir. 2019); *Samaru v. Comm'r of Soc. Sec.*, No. 18CV06321KAMLB, 2020 WL 3051576, at *10 (E.D.N.Y. June 8, 2020)(“The critical differences between activities of daily living and activities in a full time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons …, and is not held to a minimum standard of performance, as she would be by

an employer.")(quoting *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)).

Lastly, it is noteworthy that the ALJ also did not find the opinions of the State Agency review physicians persuasive.[3] (T at 23). Under these circumstances, the ALJ erred by discounting the opinions of all of the treating and examining mental health professionals without further developing the record. *See Piscope v. Colvin*, 201 F. Supp. 3d 456, 464 (S.D.N.Y. 2016)("Given the conflicts in the medical evidence, and in light of the ALJ's decision to grant none of the medical opinions full weight, the record calls for enhancement through inquiries to the treating physicians or consultants that might shed light on the import of their opinions and the conflicts the ALJ identified.").

*B. Subjective Complaints*

A claimant's subjective complaints of pain and limitation are "an important element in the adjudication of [social security] claims and must be thoroughly considered in calculating the [RFC] of a claimant." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (citation omitted); *see also*

[3] The State Agency review physicians opined that Plaintiff had no more than mild impairment in her mental functioning. (T at 85, 94). The ALJ recognized that these assessments were inconsistent with the treatment record and other opinion evidence. (T at 23).

20 C.F.R. § 416.929. However, "the ALJ is … not required to accept the claimant's subjective complaints without question." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citations omitted). Rather, the ALJ "may exercise discretion in weighing the credibility of the claimant's testimony in light of other evidence in the record." *Id*. (citation omitted); *see also Henningsen v. Comm'r of Soc. Sec*., 111 F. Supp. 3d 250, 267 (E.D.N.Y. 2015) ("The ALJ retains discretion to assess the credibility of a claimant's testimony regarding disabling pain and 'to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant.'" (quoting *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979))).

The ALJ follows a two-step process in evaluating a claimant's subjective complaints.

First, "the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Genier*, 606 F.3d at 49 (citation omitted).

Second, "the ALJ must consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record." *Id*. (citation, alterations, and quotation marks omitted). The ALJ must "consider all of the available

medical evidence, including a claimant's statements, treating physician's reports, and other medical professional reports." *Fontanarosa v. Colvin*, No. 13-CV-3285, 2014 U.S. Dist. LEXIS 121156, at *36 (E.D.N.Y. Aug. 28, 2014) (citing *Whipple v. Astrue*, 479 F. App'x 367, 370-71 (2d Cir. 2012)).

If the claimant's allegations of pain and limitation are "not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Meadors*, 370 F. App'x at 184. This inquiry involves seven (7) factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain. *See* 20 C.F.R. § 404.1529(c)(3)(i)-(vii)).

If the ALJ discounts the claimant's subjective complaints, the ALJ "must explain the decision to reject a claimant's testimony "with sufficient specificity to enable the [reviewing] Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether [the ALJ's] decision

is supported by substantial evidence." *Calzada v. Astrue*, 753 F. Supp. 2d 250, 280 (S.D.N.Y. 2010)(alterations in original, citations omitted).

In the present case, Plaintiff testified as follows: She lives with her boyfriend and has some social connections. (T at 47-48). She drives occasionally and performs household chores with her boyfriend's help. (T at 48-49). Most of her day is spent in bed. (T at 49-50). She experiences depression, anxiety, and difficulty concentrating. (T at 52-53, 57-58). She stopped working due to memory issues. (T at 54).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but concluded that Plaintiff's statements as to the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the record. (T at 17).

The ALJ's errors in weighing the medical opinion evidence, as outlined above, necessarily undermine his assessment of Plaintiff's subjective complaints. Plaintiff's description of disabling mental impairment is consistent with, and supported by, the assessment of every treating and examining mental health provider in the record. The ALJ erred by discounting those opinions and, in turn, Plaintiff's subjective complaints.

C. Remand

A court reviewing the denial of benefits may, in its discretion, remand a claim for further proceedings, or solely for the calculation of benefits. 42 U.S.C. § 405(g) (sentence four) (a reviewing court may enter, upon the pleadings and the administrative record, "a judgment affirming, modifying, or reversing the decision of the Commissioner ... with or without remanding the cause for a rehearing").

Where the record is complete and contains persuasive proof of disability, "no purpose would be served" by additional administrative proceedings and remand for calculation of benefits is warranted. *Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir.2000).

Here, the record is complete and contains persuasive proof of disabling mental impairments, as evidenced by multiple medical opinions from mental health professionals with the opportunity to observe and/or treat Plaintiff.

The Commissioner does not articulate any purpose that would be served by further administrative proceedings and this Court finds none. *See Jeremy B. v. Comm'r of Soc. Sec.*, No. 2:18-CV-159-JMC, 2019 WL 3297471, at *10 (D. Vt. July 23, 2019) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play

again' system of disability benefits adjudication.")(quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)).

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's request for judgment on the pleadings is GRANTED; the Commissioner's request for judgment on the pleadings is DENIED; and this case is REMANDED for calculation of benefits. The Clerk is directed to enter final judgment in favor of the Plaintiff and then close the file.

Dated: November 16, 2026

s/ Gary R. Jones
GARY R. JONES
United States Magistrate Judge